## EQUITABLE BUILDING AND LOAN ASSOCIATION *et al.* *v.* HOLLOWAY.

1. While one of two persons sued jointly may by appropriate pleadings in his own behalf adopt an answer filed by the other for himself alone, they have no right to unite in tendering an amendment to such answer. Even were it otherwise, rejecting such an amendment affords no just cause of complaint to either defendant, when allowing it would benefit neither.

2. The defendant in an action for land and mesne profits, brought under the "pleading act of 1893," may defend as against the plaintiff's demand for rent without admitting that he was in possession of the premises in dispute at the commencement of the action. Rule 25 of the superior courts was to this extent modified by that act, the provisions of which are now embraced in the Civil Code.

3. An answer to such an action, denying that the defendant "is in possession of the property as described" in the plaintiff's petition, and "that there is any such property," though not technically a disclaimer by the defendant, does not, so far as the action relates to the recovery of the realty, meet the requirements of the above-mentioned rule; nor can such an answer be made good by an amendment containing substantially similar averments, although it also alleges that the defendant is in possession of certain land the description of which, as set forth in such amendment, does not affirmatively show that it is the land described, or intended to be described, in the plaintiff's petition.

4. The truth of an allegation made in such a petition as to the value of the premises for rent is not admitted by a failure to answer; and the demand for rent, being in the nature of a claim for unliquidated damages, must be proved.

Argued April 5, 1901. — Decided February 6, 1902.

Complaint for land. Before Judge Henry. Floyd superior court. October 17, 1900.

*Rowell & Rowell, Fouché & Fouché,* and *McHenry & Maddox,* for plaintiffs in error. *Dean & Dean* and *Denny & Harris,* contra.

LUMPKIN, P. J. An action was brought in the superior court of Floyd county, by J. L. Holloway against the Equitable Building and Loan Association and Emma Avery, for the recovery of land and mesne profits. The plaintiff's petition was framed under the "pleading act of 1893," the provisions of which are now embraced in the Civil Code. The description of the property as set forth in paragraph 1 of the petition was as follows: "That tract of land lying and being in the Hargrove's subdivision of the Cothran and Chisolm addition to the City of Rome, Floyd County, Ga., known as lot number twenty-two (22) in said subdivision, fronting on Hill street seventy-five (75) feet, and running back with that equal

width one hundred (100) feet, which said property is bounded on the north by Felix Hargrove's lot, on the east by J. A. Bale's lot, on the south by Hill street, and on the west by Govan's lot; being the same conveyed to Crawford Wilson by Jake C. Moore on the 8th day of April, 1895, by deed of record in the clerk's office of Floyd superior court, in book YY, page 715." In paragraph 4 of the petition it was alleged "that said defendants refuse to deliver said land to petitioner or to pay him the profits thereof." When the judge called the case at the appearance term, "counsel for the defense responded ' answered,'" and his honor, having thus derived the impression that both defendants had answered in writing, wrote the word "answered" upon the issue docket. In point of fact a written answer was filed by the association only. At the beginning of this answer the case was stated as that of "J. L. Holloway vs. The Equitable Building & Loan Asso.," and the body of the answer was in these words: "First: Answering paragraph one of plffs. petition in above-stated case, defendant says it denies that it is in possession of the property as described in said paragraph. Second: Answering paragraph two of plffs. petition, defendant denies that plaintiff in above-stated case ever has had any title, legally, to said land, either in fee or otherwise, and denies that plaintiff has ever been in possession of any such described property. Third: Answering paragraph third, defendant denies that it has received any profit from the land or property so described, as is here charged. Fourth: Answering paragraph four, defendant denies that there is any such property as described by plaintiff in the petition in above-stated case. Wherefore this defendant can not deliver up possession of any such property, or pay any profits therefor."

At the trial term when the case came on to be heard, an amendment to the answer which had been previously filed by the association was offered. At the top of this amendment, the case was stated, "J. L. Holloway vs. Equitable Building & Loan Asso. and Emma Avery." The document itself was signed by counsel for both defendants, and was in the following words: "First: Answering paragraph one of plffs. petition, defendant in the above-stated case says, that it is not in possession of the property, as set forth in said paragraph, but it is in possession of certain property in the Cothran & Chisolm addition of the City of Rome, Georgia, bounded on the north by the property of Crawford Wilson, and on the west

by Govan, on the south by McLendon, Hubbard, and Wofford, on the east by an alley, and which said property fronts some seventy-five or six feet on said alley, running back one hundred feet. That said defendant, the Equitable Building & Loan Association, bought said property as above described, of which it is now and has been in possession, by virtue of said public sale, which arose and took place by virtue of the exercise of the power contained in a deed, made in the first instance by Crawford Wilson to said Equitable Building & Loan Association on the 31st day of October, 1896, which said sale took place on the first Tuesday in November, 1898. Said deed under public sale was made to the Equitable Building & Loan Association, after the sale of said property had been duly advertised, under said power of sale, as required by law, and under the terms and by virtue of the power given in the deed by Crawford Wilson to it on October 31st, 1896, which was recorded on November 4th, 1896. Second: In answer to paragraph second, defendant says: It denies that plff. in above stated case has any title whatsoever to the property in dispute, or has ever been in possession of property in dispute as there described; but defendant, said association, says they bought said property of which they are now in possession, and have so been since November 29th, 1898, long before this suit was brought, namely, on the 31st day of October, 1896, for the sum of two hundred and fifty dollars, and that said Crawford Wilson, through his duly constituted attorney in fact or agent, in said original deed, at said sale, executed and delivered to this defendant a deed for the said real estate, of which said association is now in possession of, this defendant having purchased said land in the first instance on October 31st, 1896, of said Wilson, in good faith, without any knowledge of any outstanding title in any one else at the time they bought it, and before that time, and paid full value for it, having no notice of or reason to believe that there was any outstanding title in or to any one else at the time. That said deed by Crawford Wilson through his said attorney in fact or agent, as aforesaid, to this defendant, was delivered to and received by it, and recorded in due time, without any notice of plffs. pretended title, as set forth and charged in his petition in above-stated case, and without any reason to believe that any deed or mortgage, or other written instrument, in or to said premises had been made by Crawford Wilson to said petitioner, as

stated and claimed in the petition. Third: In answer to paragraph third of plffs. petition, defendant says that it has not received any of the profits from the land or property as set forth and described in plffs. petition in above-stated case, but it has received some rents since the 29th of November, 1898, for the property they bought at the sale above referred to, as described in this defendant's answer to paragraphs one and two of plffs. petition.    Fourth: In answer to paragraph four, defendant says that it declines to deliver the lands as described in plffs. petition to him, for there are no such, or to pay him the profits thereof, because the land there set forth and described does not answer the real description of the land defendant bought from Crawford Wilson, in the first instance, or that bought as before mentioned at public sale, under the power in their deed.    And also for the other reasons before set forth in answer to previous paragraphs of plaintiff's petition in above-stated case."

The amendment was rejected, and the following judgment was entered on the original answer of the association: "The defendant, the Equitable Building & Loan Association, having filed the above disclaimer at the appearance term, it is ordered that said defendant be discharged from said case."    The court also entered upon the docket the words, "In default as to Emma Avery," and directed a verdict for the plaintiff against her for the premises described in the petition," and $110 "rent and mesne profits."    The defendants thereupon sued out a joint bill of exceptions, in which they alleged that the court erred (1) in holding that the defendant Emma Avery was in default; (2) in adjudging that the original answer, which they contended set forth a good defense for them both as joint defendants, was a disclaimer by the association, and in refusing to allow it "to resist and defend as against plaintiff's action;" (3) in disallowing the amendment to the answer offered at the trial term as "a plea and answer of both defendants, [it having been] signed by the attorneys representing both;" and (4) in directing the verdict against Emma Avery.    We will deal with all of these exceptions, though not in the precise order in which they are set forth.

1. It is absolutely certain, we think, that Emma Avery was actually in default at the appearance term.    The answer then filed was exclusively that of the association.    It did not purport to be filed in behalf of the other defendant, and contained not even a hint connecting her with it.    There was, however, no entry of "in de-

fault," or "default," at that term, and upon this fact her counsel
based a contention, and insisted upon it in the argument here, that
she was, as matter of right, entitled to file an answer at the trial
term.    Their position was, that, until such an entry was in fact
made upon the docket, it could not be properly said there was, as
to Emma Avery, any default the opening of which would be a pre-
requisite to her entering a defense.    It could with great force, and
perhaps soundness, be urged that under the circumstances above
detailed the nunc pro tunc entry of default which the judge made at
the trial term related back to the appearance term and should be
treated as having effect from that time; but we do not find it nec-
essary to stress this view, because there were, so far as Emma Avery
was concerned, at least two other good reasons for rejecting the
amendment.    In the first place, even granting, for the sake of the
argument, that she was not in default and had the right to file an
answer, she did not avail herself of this right or attempt to do so.
She did not tender any answer at all.    The bill of exceptions
merely recites that the amendment which it is insisted should have
been treated as an answer in her behalf "was offered."    It does
not say by whom or for whom, but the amendment itself seems to
indicate that it was really offered at the instance of the corporation
defendant.    As will have been seen, it begins:  "Answering para-
graph one of plffs. petition, *defendant* in above-stated case says, that
*it* is not in possession of the property," etc.    (The italics are the
writer's.)    It will further be noted that all through this amendment
the noun "defendant," in the singular number, and the pronoun "it,"
of the neuter gender, are used to designate the party for whose ben-
efit the proposed pleading was intended.    But for the statement of
the case at the beginning, and the fact the amendment was signed
by attorneys for both defendants, there would be nothing about
the paper to indicate that there was "a woman in the case."    But
concede that it was offered jointly by both defendants.    Even then,
at the very outside, Emma Avery's counsel did, as to this matter,
nothing more than attempt to have her join the other defendant in
an effort to amend its individual answer which was already on file.
Two defendants can not unite in amending the independent answer
of one of them.    The female defendant was not a party to the an-
swer which it was sought to amend, and had not herself, at any
stage of the case, answered at all.    She therefore had no concern in

amending the other defendant's answer, and it had no right to plead for her, either directly or indirectly.

The other reason for upholding the court's action in rejecting so much of the offer to amend as could be attributed to Emma Avery was, that as to the only substantial matters set up in the answer as a defense to the plaintiff's action, viz., a denial of the existence of the property sued for and a denial of liability for mesne profits, the original answer was sufficiently full and complete and needed no amendment. That the amendment offered really would have added nothing of consquence to the original answer will, we think, more fully appear from our discussion of another point in the case. We are clear that there was no error, as against Emma Avery, in refusing to allow this amendment. The second of the reasons given in support of this conclusion is, of course, applicable to the exception taken by the association with reference to this matter.

2. It will have been noted that the plaintiff's action was brought under what is known as the "pleading act of 1893," and the question arises : to what extent, if any, do its provisions modify rule 25 of the superior courts? That rule reads as follows: "No party shall be permitted to defend an ejectment cause, or an action of complaint for land, who does not admit that he was in possession of the premises in dispute at the commencement of the action." Civil Code, § 5656. We are of the opinion that where, in bringing, under the above-mentioned statute, an action for land, the plaintiff asserts in his petition an allegation of liability on the part of the defendant for mesne profits, and the answer denies such liability, the rule of court must, in view of the statute enacted after its adoption, so far bend as to allow the defendant to contest with the plaintiff the issue thus distinctly made by their respective pleadings. To this extent, at least, the defendant must be "permitted to defend" the action. There was in the present case an allegation of liability for mesne profits, and, in our judgment, the original answer embraced a sufficient denial of that liability. It denied possession of the property "as described" in the plaintiff's petition, denied that the association had "received any profit from the land or property so described, as is here charged," and denied the existence of any such property. It was therefore erroneous to refuse to allow the corporation defendant "to resist and defend as against plaintiff's action," in so far as related to the claim for rent. But this error proved to be harm-

less, for the court by an order discharged this defendant, and there was no recovery of rent against it.

3. We do not, however, think that the "pleading act" so far abrogated the rule of court as to render it permissible for the defendant in an action for land to contest with the plaintiff the title or right of possession thereto without admitting "possession of the premises in dispute at the commencement of the action." That act contemplated that the pleadings, pro and con, in every case should present for determination by a jury sharp and distinct issues appropriate to the case. It could not have been intended to allow a defendant out of possession and actually or impliedly disclaiming ownership of the premises which the plaintiff had undertaken to describe to force the latter to go before a jury and prove allegations which were not denied. And we are extremely confident that this excellent act was not designed to bring about a jury trial of such an abstract issue as the existence or non-existence of a particular parcel of land. Surely, the lawmaking power never conjectured that an issue of this sort would or could arise in an action for land. It is hardly conceivable that it could be an appropriate issue for solemn judicial investigation and determination in a case of any kind. Controversy over title and right of possession is the very gist of an action for land. Controversy as to whether or not such a parcel of land as that described in plaintiff's petition exists at all can not, under proper pleadings, ever arise in such an action. It is safe to say that the plaintiff in the present case did not intend, when he filed his petition, to tender to the defendants, or expect to be forced to try, an issue of this nature. It is urged that the court erred in holding that the original answer of the building and loan association was a disclaimer. Strictly speaking, it may not be accurate to say one disclaims title to that which he asserts does not exist. Logically, perhaps, one can neither claim nor disclaim ownership of a nonentity; but there is no profit in disputing over mere terms when, in substance, the correct result is reached. Whether this defendant technically disclaimed or not, it did not, as to the main purpose of the plaintiff's petition, viz. the recovery of described land, tender any issuable defense or submit any appropriate issue. This, we have endeavored to show, it could not do without admitting it was at the commencement of the action in possession of the land described in that petition. The answer was so framed as to carefully

avoid making any such admission. "Defendant says it denies that it is in possession of the property as described." Even if an admission that the defendant was in possession of land for which it conjectured the plaintiff intended to sue, but improperly described, would meet the requirements of the rule, this answer did not go that far. It did not admit possession of any land; and to make this certain beyond peradventure, it went further, in the fourth paragraph, and denied the existence of "any such property as described by the plaintiff."

As above indicated, we do not think the offered amendment to the answer would have improved it. The amendment begins by declaring, in answer to paragraph 1 of the plaintiff's petition, that the defendant "is not in possession of the property as set forth in said paragraph, but . . is in possession of certain property" which it proceeds to describe. A comparison of the description of the land the possession of which is admitted with the description embraced in the petition shows plainly that the two descriptions are not even in substance identical, and that it would be impossible to say the land described in the amendment is the same as that intended to be described in the petition. Indeed, the portion of the amendment to which we are now referring, to say the least, leaves this a matter of the greatest uncertainty. But the fourth paragraph of the amendment clears up this uncertainty by averring that the defendant "declines.to deliver the lands as described in plff's petition to him, for there are no such." It makes no difference that this paragraph adds that the averment just quoted is true because the plaintiff failed to properly describe certain land which the defendant declares it had purchased from one Crawford Wilson, who, according to the plaintiff's petition, was one of the plaintiff's predecessors in title. The fact remains that both in the original answer and in the amendment the defendant adheres to the statement that the plaintiff has not described any land in actual existence. Certainly the defendant neither admitted nor intended to admit possession of that which it declared did not exist at all. The case of *Day* v. *Case*, 78 *Ga.* 58, does not rule anything contrary to what is above laid down. There it was apparent that the petition and the plea referred to the same lot of land. There had, according to the plea, been at the instance of the State two surveys of the district in which this lot was situated, one in

1832 and the other in 1842. Under the former, the lot was designated and granted as No. 128; under the latter, as No. 144. The defense was that the defendant held under the first survey and grant, and the plaintiff held under the second. The court simply ruled that, with a plea of not guilty in, the defendant could not be forced to admit the lot was No. 144, and thus lose his right to set up title to it as No. 128 under the original survey and grant. The defendant's special plea averred that the State granted, as lot No. 128, "the premises in dispute;" that is, the premises for which the plaintiff sued as lot No. 144. So there was no question that the pleadings of both parties related to the same property. We are confident that the case cited is wholly unlike the one in hand. It follows from the foregoing that, save as to so much of the answer of the corporation defendant as denied liability for rent, the court did not, as complained in the bill of exceptions, err in refusing to allow it " to resist and defend as against the plaintiff's action," and that the proposed amendment did not put this defendant in any better position to "resist and defend" than it occupied after filing its original answer. Except as to the claim for rent, this answer contained no good defensive matter, and the court could rightly have so treated it. These things being true, and there having been no recovery of rent against this defendant, it has not, we think, presented any sufficient reason for reversing the judgment.

4. It is clear, we think, that the direction of the verdict was erroneous in so far as it related to mesne profits. The demand for rent was in the nature of a claim for unliquidated damages, and the amount of it should have been established by testimony. Emma Avery, by failure to answer, did not, in legal contemplation, admit that the value of the premises for rent was as alleged. The judgment below is reversed solely because of the error thus committed.

*Judgment reversed. All the Justices concurring.*