CARTER & ELLIOTT *v.* WILLIAMSON & CO., for use.

1. A lease of "all of the round timber, or timber suitable for turpentine purposes," on designated lots of land, each described as containing a specified number of acres, is not ambiguous. Such a lease passes, for the purposes designated, all the round timber on the land and also all other timber thereon, if any, suitable for turpentine purposes, just as the trees stood when the lease was executed; and this is true although the instrument contained a clause warranting generally the "right and title to all of the property [therein] conveyed." The lease being unambiguous, parol evidence was inadmissible to show an intention on the part of the lessor to lease lots actually having thereon the same number of acres of round timber as the lots themselves contained acres of land.

2. Irrespective of other questions presented by the record, this case turns upon the law above announced, and applying the same to the facts in evidence, the verdict was contrary to law and should have been set aside.

Argued November 23, — Decided December 20, 1898.

Action for breach of warranty. Before Judge Sweat. Wayne superior court. June 11, 1898.

*S. R. Harris* and *E. D. Graham,* for plaintiffs in error.
*Hitch & Myers,* contra.

SIMMONS, C. J. 1. Carter & Elliott leased to Williamson & Co., "all of the round timber, or timber suitable for turpentine purposes," on certain designated lots of land, each described as containing a specified number of acres. The lease contained a warranty of all of the property conveyed. Williamson & Co. brought suit, for the use of McCranie & Vickers, against Carter & Elliott for breach of warranty, claiming that 520 acres of the land contained no round timber or timber suitable for turpentine purposes. On the trial of the case, over the objection of the defendants, the judge allowed the plaintiffs to introduce a memorandum, made before the lease, for the purpose of showing what was meant by the lease. The plaintiffs claimed that it was the intention to warrant to the defendants that there were the same number of acres of round timber and timber suitable for turpentine purposes that there were acres of land. It is a recognized principle of law, that all negotiations and conversations leading up to a written contract are merged into the contract itself. Nothing said or done by the parties is admissible to vary or contradict the terms of the written contract.

If the contract is ambiguous, parol testimony may be admitted to explain the ambiguity; and it must have been upon this theory that the learned trial judge admitted the evidence above-mentioned. After carefully reading the lease, we are of the opinion that it is not ambiguous as to what was conveyed. It conveyed all of the round timber, and other timber suitable for turpentine purposes, then standing upon the lands described. It does not mean that all of this land shall be wooded with such timber, but that the lessor conveyed all of such timber as then stood upon the land. If the timber on the 520 acres was not round or suitable for turpentine purposes, such timber was not conveyed by the lease. The warranty covered no more than was conveyed, being as follows: "And the said parties of the first part will . . warrant and forever defend their right and title to all of the property herein conveyed, against themselves or the claims of any other person or persons whomsoever." If a portion of the land had been already worked for turpentine, this lease did not warrant that the trees on such portion were of the kind conveyed, but simply conveyed all timber on such portion as came within the classes conveyed. The lease would not apply to a portion of the land which had been entirely cleared of timber for the purpose of cultivating it. The lessor did not warrant more than was conveyed, and the lease conveyed only such round timber or timber suitable for turpentine purposes as was standing on the land at the time of the execution of the lease. The warranty covered such timber and no more. This being the true construction of the lease and the lease being unambiguous, the plaintiffs could not explain it by parol evidence so as to show a right to recover in this case. The verdict of the jury was contrary to law, and should have been set aside.

2. The right of the plaintiffs turning upon the principles above announced and the verdict being contrary to law, no ruling is made upon special grounds of the motion for a new trial.          *Judgment reversed. All the Justices concurring.*